```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

VAUNIE K. BROWN, on behalf of
herself and others similarly
situated,

       Plaintiff,

v.                                        Civil Action No. 5:12CV71
                                                                 (STAMP)
CHESAPEAKE APPALACHIA, LLC,

       Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING AS MOOT PLAINTIFF'S MOTION TO
STRIKE DECLARATION OF MARK A. ACREE AND
DENYING AS MOOT MOTION FOR LEAVE TO FILE
SUPPLEMENTAL RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Procedural History

      The plaintiff, Vaunie K. Brown, filed this putative class action in the Circuit Court of Hancock County, West Virginia.  The complaint seeks a declaratory judgment regarding the construction and/or validity of certain oil and gas leases, to quiet title to the oil and gas rights associated with those leases, and damages for allegedly tortious behavior of the defendant relating to those leases.  The defendant removed this civil action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, citing jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a).

      Following removal, the parties appeared before this Court for a status and scheduling conference, at which conference, this Court directed the parties to engage in both class certification and

limited merits discovery to include only the plaintiff's request for declaratory judgment relating to the construction of Paragraph 19 of plaintiff's lease ("the Paragraph 19 issue"). The parties were directed to file dispositive motions regarding this issue at the close of this limited merits discovery period. The parties have both now filed motions for summary judgment regarding the Paragraph 19 issue, and both of these motions are fully briefed. The plaintiff also filed two supplemental motions, one to strike an affidavit attached by the defendant to its response to the plaintiff's motion for summary judgment, and a second seeking leave to file a supplemental memorandum in support of the plaintiff's motion for summary judgment. For the reasons that follow, the defendant's motion for summary judgment on the Paragraph 19 issue is granted, the plaintiff's motion for summary judgment on the Paragraph 19 issue is denied, and the plaintiff's supplemental motions are both denied as moot.

## II.  Facts

On or about April 2007, the named plaintiff, Vaunie K. Brown, entered into an oil and gas lease with Great Lakes Energy Partners, LLC regarding the oil and gas rights to her property, which is located in Hancock County, West Virginia ("the Lease"). The Lease had a primary term of five years, or April 11, 2007 to April 12, 2012, and contained a lease extension provision in Paragraph 19 of the Lease. Paragraph 19 reads as follows:

> In consideration of the acceptance of this lease by the
> Lessee, the Lessor agrees for himself and his heirs,

> successors and assigns, that no other lease for the mineral covered by this lease shall be granted by the Lessor during the term of this lease or any extension or renewal thereof granted to the Lessee herein. <u>Upon expiration of this lease and within sixty days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease</u>.

(emphasis added).

Prior to the expiration of the primary term of the Lease, Great Lakes Energy Partners, LLC assigned the Lease to the defendant. Then, despite the fact that no drilling activity had taken place on the plaintiff's property at the time of the expiration of the primary term of the Lease, thirteen days prior to the expiration of the Lease, the defendant filed a Notice of Extension of Oil and Gas Lease with the Clerk of the County Commission of Hancock County, West Virginia, which indicated that the Lease was extended for a five-year secondary term, under the same terms originally contained in the Lease. The defendant then sent the plaintiff a letter with an enclosed check for the original bonus payment amount of $1,000.00, and informed the plaintiff that it had elected to extend the Lease for five years pursuant to Paragraph 19 of the Lease.

The plaintiff then filed this putative action on behalf of herself and all others similarly situated in West Virginia, seeking a determination as to whether Paragraph 19 allows the defendant to unilaterally extend the Lease under the same terms contained in the Lease during the primary term. She also seeks to quiet title to the oil and gas rights on her property and the properties of those

similarly situated and asks for damages related to the defendant's alleged tortious behavior related to the Lease.

### III. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual

4

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

The parties agree that the facts of this case are not in question, and that the sole issue for determination by this Court, at this time, is the Paragraph 19 issue. To this point, the plaintiff first argues that Paragraph 19 unambiguously grants the

defendant nothing more than a preferential option, and requires the defendant, should it desire to maintain a leasehold on the subject property following the primary term, to enter into "exclusive negotiations with the lessor for sixty (60) days following the expiration of the lease . . . ." ECF No. 36 * 11.  The plaintiff argues that this reading of Paragraph 19 gives "full effect" to all of the "phrases" within the paragraph.  Id.  Specifically, the plaintiff places particular emphasis on the use of the phrases "like lease" and "similar terms" rather than "same lease" and "identical terms."  Id.

The plaintiff argues that these terms, "like lease" and "similar terms," apply equally to modify both the verb "renew" and to the verb "extend".  As such, the plaintiff, argues the defendant, was not granted an option to simply "extend" the Lease, or "renew" a like lease with similar terms, but was rather simply granted a right to "extend" a like lease with similar terms, or "renew" a like lease with similar terms.  Finally, the plaintiff argues that the term "extend" does not require that the extended lease contain identical terms to the original lease. Alternatively, the plaintiff argues that the lease is ambiguous and thus must be construed in her favor, that Paragraph 19 is void for vagueness and, finally, that Paragraph 19 is void as violative of the rule against perpetuities.

The defendant also argues that Paragraph 19 is unambiguous. However, the defendant argues that the paragraph provides the defendant with the option to either extend the Lease or to renew a

like lease under similar terms. Chesapeake Appalachia, LLC ("Chesapeake") maintains that the plaintiff's reading of the relevant sentence reads out of the sentence the word "or" and improperly gives an identical meaning to the words "extend" and "renew." The defendant also argues that the plaintiff's argument regarding her interpretation of Paragraph 19, as well as her argument under the rule against perpetuities was not pled in her complaint, and thus should not be considered.[1] For the reasons that follow, this Court agrees with the defendant that Paragraph 19 unambiguously grants the defendant a single option to extend the Lease or to renew a like lease with similar terms.[2] As such, the defendant's motion for summary judgment on the Paragraph 19 issue will be granted.

Under West Virginia contract law, when interpreting the terms of a contract, a court must first look to the four corners of the

---

[1] The plaintiff's complaint argued simply that Paragraph 19 was "legally insufficient to convey an option" and was void for vagueness. ECF No. 3 Ex. 1 *3-*4.

[2] As noted above, the plaintiff has filed a motion to strike the affidavit of Mark A. Acree, filed as an exhibit to Chesapeake's response to the plaintiff's motion for summary judgment, as it is parol evidence which cannot be considered in the interpretation of an unambiguous agreement. See Doganieri v. United States, 520 F. Supp. 1093, 1097 (N.D. W. Va. 1981). The plaintiff has also filed a motion for leave to supplement her motion for summary judgment with evidence of another "Paragraph 19" lease which Chesapeake has offered to negotiate. Both of these motions will be denied as moot. While the plaintiff argues in her motion to strike that parol evidence cannot be properly considered, she then asks this Court to consider parol evidence which she believes acts in her favor through her motion for leave to supplement. This Court finds Paragraph 19 to be unambiguous, and thus finds irrelevant any parol evidence beneficial to either interpretation proposed by the parties.

contract itself, and give all terms contained therein their normal and natural meaning.  See Syl. pt. 4, Zimmerer v. Romano, 679 S.E.2d 601, 604 (W. Va. 2009); Fraternal Order of Police v. City of Fairmont, 468 S.E.2d 712, 716 (W. Va. 1996).  In determining the meaning of the terms of a contract, the court must also consider the instrument as a whole.  See Syl. pt. 1, Maddy v. Maddy, 105 S.E. 803 (W. Va. 1921).  Further, it is a fundamental rule of contract interpretation that courts must give effect to every clause and term "rather than leave a portion of the contract meaningless or reduced to mere surplusage." Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1127 (4th Cir. 1993).  When the court finds that the contractual language is plain and unambiguous on its face, it is charged with simply applying that language, rather than construing it.  Cabot Oil & Gas Corp. v. Huffman, 705 S.E.2d 806, 814 (W. Va. 2010).  Accordingly, a contract is determined to be plain and unambiguous, no extrinsic evidence may be offered or considered to alter or define the terms therein.  Cabot Oil & Gas Corp., 227 W. Va. at 118 (internal citations omitted).

The entirety of this Court's inquiry as to the Paragraph 19 issue surrounds the following sentence:  "Upon expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease." ECF No. 3 Ex. 1 *14.  As noted above, the plaintiff argues that this sentence simply provides the defendant with a priority option to negotiate with the plaintiff a "like lease" with "similar terms" at the expiration of the primary term of the Lease.  This

Court finds that this reading by the plaintiff fails to give effect to each of the terms contained in the relevant sentence and, therefore, cannot be the most reasonable interpretation thereof.

As an initial matter, the plaintiff's reading would require this Court to find that the terms "extend" and "renew" are entirely synonymous in the context of the Lease, and are essentially just repetitive iterations of the same verb.[3] Such an interpretation would render meaningless the use of both terms rather than one or the other exclusively, and would declare the use of both terms "mere surplusage." See Goodman, 7 F.3d at 1127. Such a result is necessarily incorrect. Accordingly, each of these terms must be given effect as intentionally included independently of the other, and each afforded its plain and natural meaning.[4] Merriam-Webster Online Dictionary defines the term "extend" to mean "to cause to be longer," while "renew" is generally defined as "to become new or as new" or "to begin again." Through these definitions, the difference between the terms becomes clear. To extend is to simply lengthen that which already exists, while to renew is start again with something new. These definitions strongly indicate that Paragraph 19 was intended to grant the defendant two options, a

---

[3] This Court notes that the plaintiff directly argues that the lease only intends to grant a "renewal" option and that "extend" is simply superfluous language. See ECF No. 36 *17-*18.

[4] That each of these terms were intentionally included in order to convey two separate options to the defendant is made more convincing by the fact that the previous sentence of Paragraph 19 also specifically indicates that the lessor may not grant another lease for the mineral covered by the Lease "during the term of this lease and any extension or renewal thereof."

first which would allow it to simply lengthen the term of the Lease as it was signed in 2007, and a second which would allow the defendant to approach the plaintiff to alter the terms of the Lease, and to create a new "like lease" with "similar terms."

The plaintiff argues that this interpretation is inconsistent with the findings of other courts, which have found that the term "extend" does not necessarily require a mere continuation of the exact same terms of the lease previously held between parties. In support of this argument, the plaintiff relies upon the decision of the West Virginia Supreme Court of Appeals in <u>United Woolen Mills Co. v. R.W. Honaker</u>, 122 S.E. 440 (W. Va. 1924). In that case, the West Virginia Supreme Court of Appeals found that a landlord was required to allow the existing tenant to remain in the property at a new rental rate commensurate to the current reasonable rental value of the property based upon the following language: "[i]t is agreed between the parties hereto that . . . the lessee shall have the privilege of extending or renewing . . . ." <u>Id.</u> at 441. In determining that this language expressly provided that the lessee be allowed to remain on the property, but at the adjusted rental rate, the court stated that it need not decide whether the lessor would be required to "renew" the lease or to "extend" it, because "the renewal clause [] calls for both". <u>Id.</u> at 444. However, the Court noted that the parties would not be required to execute a new agreement, and later referred to its award to the plaintiff as an "extension of the lease." <u>Id.</u> As noted above, the plaintiff in this case asserts that this action by the West Virginia Supreme

10

Court of Appeals, which effectively "extends" a lease with terms that differ from the original lease executed between the parties, shows that the term "extend" does not necessarily mean that the terms of the contract remain identical to the original agreement. Id.

This reading and application of Woolen Mills Co. ignores much of what the court conveys in that opinion in favor of placing inappropriate weight on a point which the court expressly refuses to decide. Id. As noted above, while the court in Woolen Mills Co. ultimately appears to grant the plaintiff an extension of its lease rather than a renewal of the same, the court expressly states that it "need not decide whether defendant shall be required to 'renew' the lease or to 'extend' it." Id. at 444. Accordingly, that the award granted by the court appears to be an extension rather than a renewal should not be construed as intended to convey any opinion of the court as the meaning of "extend" or "renew." Further, if this Court were to engage in an analysis as to the interpretation of the West Virginia Supreme Court of Appeals of these two terms as expressed in Woolen Mills Co., it would result in a finding differing from that offered by the plaintiff.

In Woolen Mills Co., after the court indicates that it will not determine whether a renewal or an extension is granted, it endeavors to consider whether the parties will be required to execute a new lease. To that point, the court indicates that it is of the opinion that "a 'renewal' contemplates the execution of a new lease." Id. (citing Whalen v. Manley, 69 S.E. 843 (W. Va.

11

1910)). However, the court continues to state that, while the lease in Woolen Mills Co. was altered slightly, "the 'extension' answers all requirements of this case, and as the original lease answers the purpose sufficiently, our decree will not require the execution of a new agreement." Id. As such, the court seems to say that, while the award granted in that case was not technically an "extension" because the changes made to the original lease were limited, the parties could treat it as an extension and continue to operate under the original lease.

If this decision informs this Court in any way as to its inquiry in this case, it would be to provide indication, along with that more clearly conveyed in Whalen v. Manley, 69 S.E. 843, that West Virginia considers the terms "renew" and "extend" in the context of a lease to carry quite different meanings, and that "renew" requires the execution of a new lease, while "extend" refers to the continuation of the original lease executed between the parties.

West Virginia is not the only state to read these terms to have fundamentally different meanings and requirements in the context of contract and statutory interpretation and, in fact, the difference between the meaning of these two terms in the context of a contract or statute is rather well established and agreed upon throughout the United States. See Kollock v. Kaiser, 73 N.W. 776, 779 (Wisc. 1897) ("It would seem that the construction adhered to in some jurisdictions, that to renew is equivalent to extend, violates the rules of language to reach a judicial construction out

12

of harmony with the universally accepted meaning of the words as defined by lexicographers."); Iowa v. Kiefer, 163 N.W. 698 (Iowa 1918) (quoting Kollock, 73 N.W. at 779); Loeffler v. Federal Supply Co., 102 P.2d 862, 864 (Okla. 1940) ("To renew a charter is to revive a charter which has expired . . . [t]o 'extend' a charter is 'to increase the time for the existence of on which would otherwise reach its limit at an earlier period'." (internal citations omitted)); Quinn v. Valiquette, 68 A. 515, 518 (Vt. 1908) (Criticizing the construction of a covenant in a previous case, which case, "fail[ed] to note the difference in meaning between renew and extend; one meaning, to make over; to reestablish; to rebuild; the other, to prolong; to lengthen out."); Williams v. Federal Machine Shop, 8 La. App. 281 (La. 1928); Camelot v. AMC ShowPlace Theatres, Inc., 665 F.3d 1008, 1010 (8th Cir. 2012) ("Minnesota courts distinguish between options to renew and options to extend. An option to extend continues a lease under the terms outlined in an existing lease whereas an option to renew leaves open the terms in the renewal period and is enforceable only if the parties agree to new terms in writing.").

The plaintiff claims that, despite this consistent and long-standing interpretation of the difference between a contract extension and a contract renewal option in the context of the Lease, the terms "renew" and "extend" mean the same thing. In support of this argument, the plaintiff asserts that, if "renew" and "extend" are not both modified by the terms "like lease" and "similar terms," the term "extend" is left without a direct object

13

in the sentence, requiring this Court to read a non-existent one into the sentence. In other words, the plaintiff asserts that this Court would be changing the sentence to read: "Upon expiration of this lease and within sixty days thereinafter, Lessor grants to Lessee an option to extend <u>under identical terms the existing lease</u> or renew under similar terms a like lease." This, the plaintiff argues, is beyond the Court's authority in interpreting the Lease.

This Court disagrees that its interpretation of the differing meanings of "renew" and "extend" in the Lease reads language into Paragraph 19. As explained at length above, the term "extend" has long been defined as meaning to simply lengthen or draw out that which already exists, while renew means to start fresh or make over with a new agreement. Accordingly, the mere use of the word "extend" necessarily implies that the existing terms and existing lease would continue. In other words, the inclusion of an explanatory direct object is not necessary for the term "extend," as it necessarily means that the existing lease continues. The term "renew" however, while obviously implying the creation of a new lease, could be interpreted as allowing the Lessor to demand an entirely differing lease under very different terms. In order to limit the meaning of "renew," the contract thus must include the explanatory direct objects of "like lease" and "similar terms." Accordingly, the plaintiff's argument in this regard also lacks merit.

In addition to the fact that the plaintiff's reading of the relevant sentence in Paragraph 19 reads meaning out of the use of

14

the term "extend," it also reads meaning out of the use of the word "or" between the two terms. Again, this Court must give effect to, and apply the common and usual meaning of "or" to its interpretation of this sentence. Under West Virginia law, "it is axiomatic that 'where the disjunctive "or" is used, it ordinarily connotes an alternative between the two [or more] clauses it connects.'" See West Virginia v. Saunders, 638 S.E.2d 173, 177-78 (W. Va. 2006) (quoting West Virginia v. Taylor, 346 S.E.2d 822, 825 (1986)). Accordingly, to read the relevant sentence in Paragraph 19 to mean that "extend" and "renew" have the same meaning would mean to read that the term "or" is creating two alternatives options which are simply the same option restated twice. Put another way, the Lease would thus grant Chesapeake the right to "renew under like terms a similar lease OR IN THE ALTERNATIVE, renew under like terms a similar lease." Such an interpretation not only violates the basic principles of contract interpretation, but produces a nonsensical result.

Accordingly, it is clear to this Court that the relevant sentence of Paragraph 19 unambiguously grants the defendant two alternative options, one, to extend the existing lease, and two, to renew a like lease under similar terms.[5] The parties' arguments

---

[5]The parties also engage in a grammatical deconstruction of the relevant sentence of Paragraph 19. Because this Court finds that the meaning of the relevant sentence is clear and unambiguous through the analysis above, attempting to further break down the sentence through the strict application of the grammatical rules presented and challenged by the parties is unnecessary. See Payless Shoesource, Inc. v. Travelers Cos., Inc., 585 F.3d 1366, 1371-72 (10th Cir. 2009).

15

regarding the interpretation of terms of Paragraph 19 based upon any evidence other than the language contained therein are thus moot, and the defendant's motion for summary judgment must be granted.

Further, the plaintiff's argument that the defendant's interpretation of Paragraph 19 renders it void as violative of the rule against perpetuities is also without merit. Initially, this Court notes that the plaintiff did not raise this claim in her complaint, and cannot do so for the first time in her motion for summary judgment. See <u>Barclay White Skanska v. Battelle Mem. Inst.</u>, 262 F. App'x 556, 563 (4th Cir. 2008). It is also noted that the plaintiff offers no reply to the defendant's responsive argument to her rule against perpetuities claim. Nonetheless, the plaintiff argues that the language of her complaint was broad enough to encompass a rule against perpetuities argument. For the sake of argument, this Court will address the plaintiff's claim in this regard.

This Court need not go into an in depth discussion of the rule against perpetuities, but suffice to say that the plaintiff argues that, if the relevant sentence of Paragraph 19 grants the defendant a unilateral right to extend the Lease under the same terms, it violates the rule against perpetuities, as it would give Chesapeake an unfettered ability to extend the lease in perpetuity. This argument fails as a matter of West Virginia law. West Virginia courts have consistently found that extension and renewal clauses in leases, barring the inclusion of language "so plain as to admit

no doubt of the purpose to provide for a perpetual renewal," grant the lessee a right to a single renewal or extension. <u>Thaw v. Gaffney</u>, 83 S.E.2d 983 (1914). This rule was well explained by the West Virginia Supreme Court in <u>D.W. Lawson v. The West Virginia Newspaper Publishing Co.</u>, 29 S.E.2d 3 (1944):

> A general covenant to renew or a covenant to renew with like terms, conditions and covenants does not import a renewal covenant in the renewal lease . . . It is quite plain that a lease containing a covenant to renew at its expiration with similar covenants, terms and conditions contained in the original lease is fully carried out by one renewal without the insertion of another covenant to renew . . . The same rule applies to covenants for a continuance or extension of a lease. <u>It is the rule that a provision in a lease in general terms for a renewal or continuance of the lease will be construed as providing for only one renewal</u>.

(emphasis added).

It is clear that the renewal or extension clause in Paragraph 19 of the Lease does not contain explicit language granting the defendant any further renewal or extension option outside of the single option explained in <u>D.W. Lawson</u>. Accordingly, the general rule allowing for a single option is applicable to the Lease, and Paragraph 19 thus does not violate the rule against perpetuities.[6]

---

[6] This Court will not address the plaintiff's untimely argument that if Paragraph 19 is read as the defendant argues, it is void as unconscionable. The plaintiff not only fails to bring this claim in her complaint, but also fails to raise it in her motion for summary judgment. See <u>Barclay White Skanska, Inc.</u>, 262 F. App'x at 563. This argument makes its first appearance in the plaintiff's reply to the defendant's response to her motion for summary judgment, and in her response to the defendant's motion for summary judgment. Accordingly, it is not properly raised, and will not be addressed.

17

V.  <u>Conclusion</u>

For the reasons stated above, the plaintiff's motion for summary judgment (ECF No. 36) is DENIED. The defendant's motion for summary judgment on the Paragraph 19 issue (ECF No. 32) is GRANTED.[7] The plaintiff's motion to strike the declaration of Mark A. Acree (ECF No. 40) is DENIED AS MOOT. The plaintiff's motion for leave to file a supplemental response to the defendant's motion for summary judgment (ECF No. 45) is DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   August 21, 2013

<u>/s/ Frederick P. Stamp, Jr.</u>  
FREDERICK P. STAMP, JR.  
UNITED STATES DISTRICT JUDGE

---

[7] While the defendant asserts that, in granting its motion for summary judgment, this Court must necessarily dismiss the plaintiff's remaining claims, this Court's scheduling order of July 25, 2012, specifically allowed merits discovery on the Paragraph 19 issue only. Further, it also appears that the motions for summary judgment do not provide a full briefing of whether granting the defendant's motion for summary judgment renders moot the plaintiff's remaining claims. Accordingly, this Court will schedule a status and scheduling conference by separate order and allow the parties to present their positions on the remaining claims on a later date at a status and scheduling conference before this Court.